**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARCUS HAMPTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 18 cv 6346 |
| | ) | |
| COUNTY OF COOK and SHERIFF | ) | Judge GETTLEMAN |
| OFFICER ALEXANDRA BOUZIOTIS, Star | ) | |
| #141, CHRISTOPHER MCDONOUGH, | ) | Magistrate Judge FUENTES |
| Star #616, and BRUCE STEINKE, Star #42, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S COMBINED RESPONSE IN OPPOSITION
TO THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Plaintiff, MARCUS HAMPTON, by and through counsel, SHILLER PREYAR JARARD & SAMUELS, pursuant to Fed. R. Civ. P. 56, providing his Combined Response in Opposition to the Defendants' Motion for Summary Judgment. In support thereof, Plaintiff states as follows:

**INTRODUCTION**

Plaintiff Marcus Hampton has sued Defendant Alexandra Bouziotis for denial of medical care, unlawful pretrial detention, and malicious prosecution. He has sued Defendant Christopher McDonough for denial of medical care and unlawful pretrial detention. And he has sued Defendant Steinke for unlawful pretrial detention. In this case where both parties offer radically different versions of events, the tie breaker is the timeline of events. Here, the defendants' own police reports and radio calls impale their mendacious defense. As Plaintiff's case is supported by credible, admissible evidence, the Court should deny the defendants' motion for summary judgment.

1

**STATEMENT OF FACTS**

Plaintiff hereby incorporates all of the undisputed facts submitted by Defendants, as well as his statement of additional facts submitted pursuant to L. R. 56.1(b)(3).

**ARGUMENT**

The Court should deny summary judgment for the defendants as there are several genuine issues of material fact. Summary judgment is only appropriate when, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists when the evidence is such that a reasonable jury could find for the nonmovant. *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). The movant in a motion for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record. Fed. R. Civ. P. 56(e). If that party succeeds in doing so, the burden then shifts to the nonmovant to set forth specific facts showing that there is a genuine issue of fact for trial. *Id*.; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

In considering motions for summary judgment, a court construes all facts and draws all inferences from the record in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "In the light most favorable" means that summary judgment is not appropriate if the court must make, "a choice of inferences." *See United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also First Nat'l Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 280 (1968). The choice between reasonable inferences from facts is a jury

function. *See Anderson*, 477 U.S. at 255. Here, the Court should deny the defendants' motion for summary judgment as the disputed material facts are better left for a jury to decide.

## I.   PLAINTIFF'S CLAIMS WERE TIMELY PLEAD WITHIN THE APPLICABLE ACCRUAL PERIOD.

Federal claims must be filed within two years of the date of accrual in Illinois. *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993). Plaintiff's claims are timely because they were tolled by the discovery rule. The accrual is the date on which the statute of limitations begins to run. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). When evaluating when a claim accrues, courts first must identify the injury and then the date on which a plaintiff could have sued for that injury. *Richardson v. City of Chicago*, 314 F. Supp. 3d 999, 1099 (N.D. Ill. 2018). "As part of this second step, the Court must consider when the plaintiff knew that a particular defendant was involved in causing his injury." *Richardson v. City of Chicago*, 314 F. Supp. 3d 999, 1009 (N.D. Ill. 2018); *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004) (accrual occurs when the plaintiff discovers that 'he has been injured and who caused the injury'" (quoting *United States v. Duke*, 229 F.3d 627, 630 (7th Cir. 2000)). Here, plaintiff's claims are timely because his federal claims did not accrue until the criminal charges were dismissed.

### A.   Plaintiff's Federal Claims were *Heck* Barred Prior to the Ruling on the Motion to Suppress His Statement.

Plaintiff could not have brought his unlawful pretrial detention and denial of medical care claims during the pendency of the criminal proceedings because they would have been barred. In *Heck*, the Supreme Court ruled that a plaintiff cannot bring a § 1983 claim which, if successful, would imply the invalidity of a state court criminal proceeding or detention. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also McDonough v. Smith,* ___U.S.___, 139 S. Ct. 2149

(2019)(holding that the *Heck* doctrine applies to § 1983 claims brought by plaintiffs who have

not been convicted but are subject to ongoing criminal proceedings) (citing *McDonough v.*

*Smith*, 139 S. Ct. 2149, 204 L. Ed. 2d 506 (2019) and *Savory v. Cannon*, 947 F.3d 409, 414 (7th

Cir. 2020)). For that reason, the Seventh Circuit recently explained that that if, "a conclusion that

[the plaintiff's] confinement was unconstitutional would imply the invalidity of an ongoing

criminal proceeding ... , then *Heck* would continue to bar [his] claim after his release and until

either those proceedings terminated in his favor or the conviction was vacated." *Sanders v. St.*

*Joseph Cnty.*, 806 F. App'x 481, 484 n. 2 (7th Cir. Mar. 31, 2020).

Here, that analysis controls as there is no way Mr. Hampton's detention could have been

challenged without challenging the validity of the ongoing criminal proceedings. The analysis

here is almost identical to that done in *Culp. Culp v. Flores,* 2020 U.S. Dist. LEXIS 65978, 2020

WL 1874075 (N.D. Ill. 2020). There the plaintiff alleged that he was charged with a crime based

upon fabricated police reports created by the defendants. *Id.* at *2. When determining when the

unlawful pretrial detention claim accrued, the Court found that, ""given the nature of his Fourth

Amendment claim, a finding that Culp's detention in jail was unconstitutional would imply the

invalidity of the charges against him, [and] *Heck* barred that claim until those charges were

dismissed." *Id.* at *3. Here, too, success on Mr. Hampton's unlawful detention claim is wholly

incompatible with a conviction on the charges for which he was prosecuted. *See id.* Therefore,

Mr. Hampton's claim did not accrue until the charges against him were dismissed on 21 June

2018. *See id.; see also Hill v. Cook Cty.*, 2020 U.S. Dist. LEXIS 94771, 2020 WL 2836773, at

*11 (N.D. Ill. May 31, 2020)(holding unlawful pretrial detention claims are subject to *Heck*);

*Serrano v. Guevara*, 2020 U.S. Dist. LEXIS 98130, 2020 WL 3000284, at *18 (N.D. Ill. June 4,

2020)(same); *Spencer v. Village of Arlington Heights*, No. 18-cv-00528, 2020 U.S. Dist. LEXIS

134895 (N.D. Ill. July 30, 2020); *Moore v. City of Chicago*, No. 19 CV 3902, 2020 U.S. Dist. LEXIS 101340 (N.D. Ill. June 10, 2020)(same).

Likewise, predicate for Mr. Hampton's denial of medical care claim is that defendants denied him care in order to obtain false and fraudulent confession. Therefore, in order to succeed on his denial of medical care claim Plaintiff would have had to established that he was under medical duress to which the defendants respond unreasonably. That would invalidate the probable cause for his detention: the statement. A conviction is, thus, incompatible with Mr. Hampton's claim. For these reasons, Plaintiff's federal claims did not accrue until the charges against him were dismissed.

## B. Mr. Hampton Could Not Have Identified the Defendants Earlier Due to <u>the Defendants' Misconduct and Because He Blacked Out</u>.

Additionally, Plaintiffs claims against Defendants McDonough and Steinke are timely because of the discovery rule. Where, as is the case here, defendants' conduct causes a plaintiff to not know whom has injured him, the statute of limitations is tolled. "The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured, and by whom." *U.S. v. Norwood*, 602 F.3d 830, 837 (7th Cir. 2010); *Petra Presbyterian Church v. Vill. of Northbrook*, 489 F.3d 846, 850 (7th Cir. 2007) ("a tort claim does not arise until there is an injury . . . or until the injury (and who caused it) is discovered or should have been discovered" (internal citations omitted)). Moreover, "the date on which the claim actually accrued is for the trier of fact to determine." *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 961 (N.D. Ill. 2010).

Where there is a genuine dispute of fact over when the plaintiff's claim has accrued, summary judgment is inappropriate. For example, in *Caraker*, the plaintiff suffered a stroke that was initially explained as being caused by childbirth. *Caraker v. Sandoz Pharmaceuticals Corp.*, 96-CV-4113-JPG, 1999 U.S. Dist. LEXIS 10740, at *19 (S.D. Ill. June 7, 1999). However, they

later discovered evidence that suggested it was the result of malpractice. *Id.* Accordingly, the Seventh Circuit held that, "[a] jury could find that the Carakers reasonably believed that, without knowing any other definite cause, the stroke was caused by the recent childbirth…[t]hus, … summary judgment on whether the discovery rule applies to this traumatic injury case would be inappropriate." *Id.* Here, too, and for similar reasons, summary judgment is foreclosed.

On 18 June 2016, Mr. Hampton was placed into the back of a police car when he began to have a panic attack, exacerbating his pre-existing conditions of an enlarged heart, hypertension, and end stage renal failure. As a result, he does not clearly remember anything that occurred after that. Mr. Hampton has no recollection of being interrogated by Defendant Bouziotis or anyone else. Rather, his next clear memory is waking up in the hospital. As a result, he did could not have known who was responsible for the harm he suffered on the date that it occurred.

In addition to Mr. Hampton's physical limitations, the defendants took actions to conceal the identify of the individuals involved with this misconduct. Under Illinois law, "'[e]quitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff, or if the plaintiff has been prevented from asserting his or her rights in some extraordinary way, or if the plaintiff has mistakenly asserted his or her rights in the wrong forum.'" *American Family Mut. Ins. Co. v. Plunkett*, 2014 IL App (1st) 131631, 14 N.E.3d 676, 681 (Ill. App. 2014) (quoting *Clay v. Kuhl*, 189 Ill. 2d 603, 727 N.E.2d 217, 223 (Ill. App. 2000)). Extraordinary barriers include situations where the plaintiff could not learn the identity of proper defendants through the exercise of due diligence. *Id.* (quoting *Thede v. Kapsas*, 897 N.E.2d 345, 897 N.E.2d 345, 403 (Ill. App. 2008)).

First, Defendant Steinke testified that the arrest and incident reports were not completed correctly because they should include all assisting officers but did not. Despite this, Defendants Steinke and McDonough do not appear as having participated in the arrest or interrogation of Mr. Hampton on any report authored by Defendant Bouziotis. This was not an accident. Rather, Defendant Bouziotis authored the vehicle report to read as if she was the officer who pulled Mr. Hampton over. This intentionally misleading inference was done at the direction of Defendant Steinke who ordered Defendant Bouziotis to mark that this was her "on-view" arrest. However, it was not.

Most pertinently, Defendant Bouziotis does not include that Defendant McDonough who was likely the primary officer who interrogated Mr. Hampton on the statement. It is Defendant McDonough who filed out the top of the Miranda warnings report. It is Defendant McDonough who wrote the lines indicating where Mr. Hampton should have initialed his understanding of the Miranda caution. And it is Defendant McDonough who eventually calls for an ambulance for Mr. Hampton. While Defendant Bouziotis was certainly present, she was not the officer calling the shots that night. Rather, Defendant Bouziotis was a brand-new law enforcement officer who was working under the supervision of Defendants Steinke and McDonough. Despite their material involvement in this case, though, they do not show up as participating in any of the reports that she authored. This is not an oversight. Rather, that is a cover up.

Even at the motion to suppress hearing, Defendant Bouziotis claims—falsely—that she is the one who called for the ambulance. However, we know now that is not true. We know now that she specifically did not begin to interrogate anyone because she was waiting for Defendant McDonough to arrive and that the only reason she ever participated in any questioning of Mr. Hampton is because Defendant Steinke ordered her to do it.

Finally, although it is unclear who is responsible for failing to disclose the exculpatory evidence, it is undisputed that the radio transmission for Mr. Hampton's ambulance was never disclosed during the pendency of the criminal proceeding against him. Had it been, then the defendants would not have been able to present the fictionalized account that Defendant Bouziotis acted alone, that Mr. Hampton did not display any physical manifestations of his distress, and that an ambulance was immediately called for him.

Mr. Hampton could not have discovered who was responsible for injuring him because Defendants Bouziotis, McDonough, and Steinke were not forthright about the circumstances of Mr. Hampton's custody. By defendants' own standards, their reports are false, incomplete, and do not contain material information—like the names of all the officers involved. Accordingly, the discovery rule should apply.

### C. The Defendants Were All Sued Within the Statute of Limitations After Being Identified.

Defendant McDonough was first identified in answer to Mr. Hampton's interrogatories which were tendered 4 February 2019. Meanwhile, Defendant Steinke's involvement was first discovered as a result of Defendant Bouziotis's deposition on 9 July 2019. Accordingly, Plaintiff sought leave to file his amended complaint naming Defendants Steinke and McDonough on 31 July 2019, well within the two-year timeframe. Therefore, the defendants' motion for summary judgment as it relates to the statute of limitations should be denied.

Here, there has been no lack of diligence by the Plaintiff in pursuing his claim. He promptly filed suit after the conclusion of the criminal litigation. And he promptly sought leave to amend his complaint and add the additional defendants after they had both been identified. Moreover, the balance of hardships weighs in favor of Plaintiff and following the discovery rule as there is no suggestion that, "the problems of proof have increased significantly because of the

8

passage of time." *Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.,* 61 Ill. 2d 129, 334 N.E.2d 160, 164 (1975). Therefore, the court should deny the defendants' motion for summary judgment as his claims are timely.

## II.    GENUINE ISSUES OF MATERIAL FACT DISCLOSE SUMMARY JUDGMENT.

Here, summary judgment is in appropriate as there are disputed facts that amount to a swearing contest between competing sides. However, "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). "We have stressed in the past, and it is worth repeating, that 'a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts' on summary judgment, and must 'avoid[] the temptation to decide which party's version of the facts is more likely true." *Rowlands v. UPS*, 901 F.3d 792, 798 (7th Cir. 2018)(citing *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)). Therefore, "to the extent plaintiffs have provided any contrary admissible evidence on each contested issue, summary judgment is precluded." *de David v. Alaron Trading Corp.*, No. 10 CV 3502, 2015 U.S. Dist. LEXIS 60403, at *9 (N.D. Ill. May 7, 2015). Accordingly, the Court should deny the defendants' motion for summary judgment.

### A.    Defendants Denied Mr. Hampton Medical Care By Failing to Timely <u>Request an Ambulance</u>.

The Court should deny the defendants' motion for summary judgment as the defendants' own theory of the case shows they delayed providing Mr. Hampton with medical care. "[T]he State [has] a constitutional duty to provide adequate medical treatment to those in its custody,"

*West v. Atkins*, 487 U.S. 42, 55-56 (1988). The objective reasonableness standard governs a pretrial detainee's claim regarding the provisions of medical care. *See Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006). Factors that courts may consider when determining whether a defendant acted unreasonably are: (1) whether the defendant had notice of the detainee's medical needs; (2) the seriousness of the medical need; (3) the scope of the requested treatment; and (4) police interests, including administrative, penological, or investigatory concerns. *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007). Furthermore, Plaintiff must also show that the defendants' conduct caused the harm of which he complains. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). "The Fourth Amendment's reasonableness analysis operates on a sliding scale, balancing the seriousness of the medical need with the third factor—the scope of the requested treatment." *Ortiz v. City of Chicago*, 656 F.3d 523, 531 (7th Cir. 2011) (citing *Williams v. Rodriguez*, 509 F.3d 392, 403 (7th Cir. 2007)). Here, each of the factors weighs in favor of Plaintiff; therefore, the defendants' motion for summary judgment should be denied. *See id.*

At best, the defendants argue that they delayed calling an ambulance for approximately 15 minutes. However, they offer no reasonable basis for this delay and it, in fact, violates their own general orders and training. Furthermore, according to the defendants' theory of the case, that 15-minute delay was used to interrogate Abigail Greening who was already in custody and not going anywhere. Accordingly, the defendants' motion for summary judgment should be denied as that is not a reasonable basis to delay medical care. However, under Mr. Hampton's theory of the case, the defendants' misconduct takes on a much more pernicious character as Abigail Greening testified that both she and Marcus had been requesting medical aid for an hour before an ambulance was ever called.

Here, the defendants had notice of Mr. Hampton's medical conditions. First, Mr. Hampton testified that he told the defendants he had gone to get food so that he could take his required nightly medication. Then, after he began experiencing sharp chest pains asked for medical attention and to take his medication. Secondly, Abigail Greening testified that she told the defendants that Mr. Hampton was in medical distress and needed care. Third, as part of the intake process, Mr. Hampton would have been asked about any medical conditions. It is improbable that the lockup keeper would have hidden from the arresting officers that Mr. Hampton suffered from end stage renal failure and needed his nightly medication. Additionally, Plaintiff had a catheter sticking out of his neck, which would have put the defendants on notice that he suffered from a serious medical condition. There simply is no reasonable way an arrestee could be searched multiple times by multiple officers without any of them discovering this. The tubes visibly protruded from his body. Finally, defendants McDonough and Bouziotis admit that they saw and heard Mr. Hampton complain about his physical condition. Therefore, the first factor weighs in favor of finding that defendants had notice of Marcus's medical needs.

Secondly, Marcus's medical conditions were objectively serious. He suffered from an enlarged heart, high blood pressure, and end stage renal failure. Furthermore, Marcus physically manifested the distress that he was by sweating, going in and out of consciousness, and loss of his muscular coordination. Defendant McDonough recalled that Mr. Hampton was faint, weak, and unable to respond. The radio call shows that he was aware that Mr. Hampton could not walk. Abigail Greening testified that Mr. Hampton could not lift his head and was slumped over on a desk. Moreover, the medical records support this as by the time that the paramedics finally were allowed to treat Marcus his blood pressure had risen to 180/112, which the American Medical Association considers a hypertensive crisis.

Third, the scope of medical treatment required was relatively minor. All the defendants had to do was call for an ambulance. Instead, they refused until it was almost too late. By the defendants' own admission, they are required to call an ambulance as soon as one is requested. However, while they were still at the scene of the traffic stop they ignored Marcus's requests and Abigail Greening's pleas for them to call an ambulance and get him some help. While on their way to the lockup, they ignored Greening's imploring to get Marcus some medical attention and instead made a pitstop at the Chicago Heights Police Department. When they made it to the station, rather than get Marcus the medical help he so clearly needed, they tried to coerce him into signing a false statement and delayed calling an ambulance.

Fourth, police interests did not outweigh the need to get Mr. Hampton medical care. Again, according to defendants' own training and policy, police interests never outweigh the need to get someone medical help. Here, there was no pressing needed that stopped or prevented the officers from getting Marcus help. There was no dynamic, or high-risk situation that prevented seeking medical care for Mr. Hampton. They simply chose not to, and for the worst possible reasons.

Furthermore, both Defendants McDonough and Bouziotis are equally responsible for denying Mr. Hampton medical care. They were the transporting officers who ignored Marcus and Abigail's requests for help. And they were the interrogating officers who refused to call an ambulance for Mr. Hampton in a timely fashion. As a result of their delay, Marcus required surgical intervention when he was taken to the hospital to check the condition of his heart. Therefore, the Court should deny the defendants' motion for summary judgment as it relates to the denial of medical care.

In much less egregious cases, courts have declined summary judgment for defendants. For example, in *Ashworth v. Round Lake Beach Police Department*, the plaintiff alleged that the defendant officers denied him medical care when he complained that he was ill and needed medicine, and also failed to perform CPR on him. No. 03C7011, 2005 U.S. Dist. LEXIS 14844, at *20 (N.D. Ill. July 21, 2005). While he was in the squad car, Ashworth began coughing and showing signs of distress, including slumping. *Id.* From that, the Court determined that the defendants should have been on notice of the need for medical care. *Id.* Despite that, almost six and a half minutes passed from the first signs of the plaintiff's discomfort until defendants called for an ambulance. *Id.* Accordingly, the court found that the unjustified delay in summoning an ambulance could support a claim that the defendants denied the plaintiff medical care. *Id.* Here, the delay was exponentially more egregious as Defendants did not call an ambulance for Plaintiff until an hour after he and Abigail Greening initially requested help. Therefore, the Court should deny the defendants' motion for summary judgment.

### B. Marcus Hampton was Unlawfully Detained Pretrial Because of a False Confession.

There was no genuine probable cause for the charges levied against Mr. Hampton by Defendants Bouziotis, McDonough, and Steinke. For all the reasons stated above, the Defendants did not have probable cause for Plaintiff's detention because it was based entirely on a false, manufactured statement. In *Manuel v. City of Joliet* ("*Manuel I* "), the Supreme Court held that

> The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause. That can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it can also occur when legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements. Then, too, a person is confined without constitutionally adequate justification. Legal process has gone forward, but it has done nothing to satisfy the Fourth Amendment's probable-cause

> requirement. And for that reason, it cannot extinguish the detainee's
> Fourth Amendment claim…

___ U.S. ___, 137 S.Ct. 911, 918-919 (2017). Pursuant to *Manuel*, the Fourth Amendment

governs claims for an unlawful detention that occurs after legal process. *Manuel v. City of Joliet*,

137 S. Ct. 911, 920, 197 L. Ed. 2d 312 (2017). Here, Plaintiff does not challenge the

constitutionality of his arrest, but his detention. Therefore, the question is whether, "the formal

legal process … he received failed to establish what that Amendment makes essential for pretrial

detention—probable cause to believe he committed a crime." *Id*. at 919–20. Accordingly, the

elements of an unlawful pretrial detention claim are that the, "defendant (1) caused (2) a

prolonged seizure of the plaintiff pursuant to legal process unsupported by probable cause, and

(3) criminal proceedings terminated in plaintiff's favor." *Jackson v. City of Peoria*, No. 4:16-cv-

01054-SLD-JEH, 2017 U.S. Dist. LEXIS 48705, at *21 (C.D. Ill. Mar. 31, 2017). Here, there is a

genuine issue of material fact that precludes summary judgment as the entire basis for the

prosecution of Marcus Hampton was a fraudulent confession attributed to him.

 Here, the defendants caused the prolonged detention of Mr. Hampton vis-a-vis the false

confession. Defendant Bouziotis testified that she had no intention of taking the statement of

Marcus until ordered to by Steinke. Rather, the timeline shows that once Defendant Bouziotis

returned to the station, she began working on police reports. However, Steinke told Bouziotis the

gun was Mr. Hampton's and ordered her, under the supervision of Defendant McDonough, to get

a statement from him. Furthermore, Defendant Steinke and Lt. Jackson both testified that

Defendant Bouziotis would have gotten in trouble if she did not follow these orders. Defendant

Bouziotis likewise testified that Defendant Steinke ordered her to write false and inaccurate

reports regarding the incident that he then later approved—knowing they were false and

inaccurate. Moreover, both Defendant Bouziotis and McDonough were the ones who

interrogated Mr. Hampton and refused to provide him with medical care until they got what they wanted out of him, even going so far as to try to hold the pen in his hand and squiggle out his signature. As each defendant played a material role in the creation of the false statement, they caused the detention of Mr. Hampton.

Furthermore, the detention of Mr. Hampton pursuant to legal process was not supported by probable cause. In this case, Mr. Hampton was indicted on ten counts all related to the illegal possession of a weapon. However, there was also a criminal complaint sworn out related to possession of marijuana. Even assuming that was a valid charge against Mr. Hampton, which is not reflected on the certified disposition, the probable cause for both charges arise from the same source: the fraudulent confession. There is no other piece of evidence that ties those items to Mr. Hampton.

In a black box under the passenger seat of a car that does not belong to him, Defendants found illegal contraband. However, there was no logical or legal basis to attribute those items to Mr. Hampton. Accordingly, the entirety of the basis for the legal detention of Marcus subsequent to legal proceedings was this false confession. This is underscored by the fact that three days after the fraudulent confession was suppressed, the government dropped all of the charges against Marcus and dismissed the case.

For that reason, the Defendants' reliance on *Baker* is misplaced. *Baker v. Fermon*, 799 F. App'x 921, 924 (7th Cir. 2020). In that case, a police officer saw the plaintiff swallow what he believed to be illegal narcotics. *Id.* Accordingly, he took the plaintiff to the hospital. *Id.* Once there, however, the plaintiff never passed the bag and an x-ray showed that there was no bag in his stomach. *Id.* As a result, the plaintiff then challenged the validity of his continued detention. *Id.* In finding against the plaintiff, the Seventh Circuit found because a judge found there was

probable cause to believe he had committed the separate crime of obstruction of justice. *Id.* Here, there was not separate, independent charge to justify detaining Mr. Hampton. *See id.* Therefore, the Court should deny the defendants' motion for summary judgment.

Moreover, as a matter of law, the defendants are collaterally estopped from arguing that Mr. Hampton's statement was knowingly and voluntarily given. Under collateral estoppel, an issue actually and necessarily decided by a court of competent jurisdiction is conclusive in all subsequent legal actions involving a party to the prior litigation. *Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). Here, the issue presented at the motion to suppress hearing is identical to the issue before the court and, therefore, collateral estoppel applies. *See Thompson v. Mueller*, 976 F. Supp. 762 (N.D. Ill. 1997). Therefore, the coerced statement could not have provided a basis for probable cause and Mr. Hampton's detention was unreasonable.

Defendants spend the bulk of their motions arguing that because plaintiff's arrest was valid his pretrial detention was also valid. However, Plaintiff has made no claim regarding his arrest. Rather, he argues that the legal process pursuant to which he was detained lacked probable cause. Whether at some prior point a police officer had probable cause to believe a plaintiff had committed a crime is irrelevant to that inquiry. To hold otherwise would lead to absurd results. It would mean that a police officer could charge a person with ***any*** crime so long as at some time prior to the charging that person had committed ***a*** crime. For example, if a police officer saw a woman jaywalking, arrested her, then planted a gun on her and charged her with murder there would be no probable cause for her detention. "The sole issue is whether there is probable cause for detaining the arrested person pending further proceedings." *Gerstein v. Pugh*, 420 U.S. 103, 120 (1975). If stands to follow, then, that the determination of probable cause must be relevant to the proceeding, or charges alleged. *See id.* For whatever reason, the only charges

filed were related to a gun and, arguable, marijuana. There was no probable cause to bring those charges. The only evidence ever submitted in support of those charges was a false and coerced confession. Accordingly, the Court should deny the defendants' motion for summary judgment.

### C. Defendant Bouziotis Actively Participated in the Malicious Prosecution of Marcus Hampton.

The court should deny summary judgment as it relates to the malicious prosecution claim because Defendant Bouziotis knew she did not have probable cause to charge Mr. Hampton. To prove a malicious prosecution claim, Plaintiff would have to show that: (1) the defendants commenced or continued an original judicial proceeding against him; (2) the proceeding terminated in Plaintiff's favor; (3) the defendant lacked probable cause for the proceeding; (4) the defendant acted with malice; and (5) Plaintiff suffered damages as a result. *Hurlbert v. Charles*, 238 Ill. 2d 248, 938 N.E.2d 507, 512 (Ill. 2010); *Grundhoefer v. Sorin*, 2014 IL App (1st) 131276, 20 N.E.3d 775, 780 (Ill. App. Ct. 2014). Here, Plaintiff has established each element.

Defendant Bouziotis was both the complaining witness and an investigating officer for the criminal charges against Mr. Hampton. First, Defendant Bouziotis commenced the criminal proceeding against Plaintiff by swearing out criminal complaints against him based upon her own investigation. *See* 725 ILCS 5/111-1 (criminal charges may be commenced via an indictment, information, or criminal complaint); Therefore, she commenced the prosecution against Mr. Hampton. See *Logan v. Caterpillar, Inc.,* 246 F.3d 912, 922 (7th Cir. 2001). "Liability for malicious prosecution can be imposed when an active part is taken in continuing or procuring the continuation of criminal proceedings." *Adams v. Sussman & Hertzberg, Ltd.*, 292 Ill.App.3d 30, 684 N.E.2d 935, 945 (1997). For example, providing false testimony to ensure that there would be a finding of probable cause against a Plaintiff constitutes taking an active participation in the continuing of the criminal proceedings. Likewise, Defendant Bouziotis

drafted reports that resulted in the prosecution continuing against the Plaintiff by omitting critical information, such as the fact that Mr. Hampton was in medical duress and incapable of giving a statement. *Randall v. Lemke,* 311 Ill. App. 3d 848, 851, 726 N.E.2d 183, 186 (2d Dist. 2000) ("[W]hen an informer knowingly gives false information to a prosecuting officer, he commences the prosecution only if the prosecution is `based upon' the false information."). By intentionally misleading the prosecutors, as to the true facts and circumstances surrounding the statement, Defendant Bouziotis became an active participant who continued the proceedings. *See Rivera v. Lake Cty.,* 974 F. Supp. 2d 1179, 1191-92 (N.D. Ill. 2016).

Second, the prosecution terminated in Plaintiff's favor when all of the charges against him were dismissed. The Illinois Supreme Court has held that, except in limited circumstances, a *nolle pros* is considered a termination in favor of the accused. *Swick v. Liautaud*, 169 Ill. 2d 504, 662 N.E.2d 1238, 1243, 215 Ill. Dec. 98 (1996). Those exceptions include, "when the nolle prosequi is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, the institution of new proceedings, or the impossibility or impracticality of bringing the accused to trial." *Id.* Here, none of the exceptions apply. *See id.* Accordingly, Mr. Hampton is entitled to the inference that the termination was in his favor. *Brown v. McGee*, No. 98 C 7324, 2000 U.S. Dist. LEXIS 9005, at *10 (N.D. Ill. June 21, 2000).

As to probable cause and malice, malice can be inferred from the lack of probable cause. *William M. Ross & Co. v. Innis*, 35 Ill. 487, 505 (1864)("…malice may be inferred from the want of probable cause…."); *Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635, 651 (1st Dist. 2002) ("A lack of probable cause is sufficient to permit an inference of malice by the trier of fact."); *Frye v. O'Neill*, 166 Ill.App.3d 963, 977-978 (4th Dist. 1988)("…circumstantial evidence which

would support an inference of malice is sufficient."). Furthermore, probable cause is determined by the facts known at the time of charging, not arrest. *Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648, 858 N.E.2d 569, 574 (2006). Here, there was no probable cause to charge Mr. Hampton with possessing either a gun or marijuana. The entire basis for the charge was a fraudulent statement that Defendant Bouziotis wrote up based upon information given to her from Defendant Steinke.

Finally, Mr. Hampton suffered damage as a result of the malicious prosecution as he was charged with false felony offenses. "[W]hen it comes to prosecution, the number and nature of the charges matters: the accused must investigate and prepare a defense to each charge, and as the list of charges lengthens (along with the sentence to which the accused is exposed), the cost and psychic toll of the prosecution on the accused increase." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007). Given the number and nature of the fraudulent charges levied against him, Marcus was looking at spending the rest of his life in prison. This risk was an additional, unnecessary while he was in a vulnerable medical state.

## III.   DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Neither Defendant Bouziotis nor Defendant McDonough is entitled to qualified immunity.[1] Qualified immunity protects public officials from liability for damages if their actions did not violate clearly established rights of which a reasonable person would have known. *Fleming v. Livingston Cty*, 674 F.3d 874, 879 (7th Cir. 2012). Here, the same factual disputes that preclude summary judgment also preclude the finding of qualified immunity. The defendants were not acting on a mistaken but good faith belief as to probable cause. Rather, they

---

[1] Defendant Steinke makes no claim for qualified immunity. Dkt. 128

manufactured a false statement based upon the word of their supervisor and tried to coerce Mr. Hampton to sign it.

However, it has long been the law in that it is unconstitutional to falsify the basis for a judicial probable cause determination. *See Franks v. Delaware*, 438 U.S. 154, 98 S. Ct. 2674 (1978). Furthermore, the Seventh Circuit has held that, "*Whitlock* and its progeny stand for the proposition that if a police officer fabricates information that is used 'in some way' to deprive a plaintiff of his liberty, then that officer has violated the very laws he has sworn to protect." *Myvett v. Heerdt*, 232 F. Supp. 3d 1005, 1024 (N.D. Ill. 2017) (citing *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012)). Accordingly, Defendants are not entitled to qualified immunity on Plaintiff's unlawful pretrial detention claim because it was clearly established that it was unconstitutional to falsify probable cause.

Furthermore, the Seventh Circuit has previously held that "[p]olice must provide care for the serious medical conditions of persons in custody… That right is clearly established." *Paine v. Cason*, 678 F.3d 500, 506 (7th Cir. 2012). Here, drawing all reasonable inferences in favor of the Plaintiff, defendant officers delayed an hour or more prior to requesting medical care for Plaintiff. Therefore, they clearly violated his established rights and are not entitled to qualified immunity. *See Ashworth v. Round Lake Beach Police Department*, 2005 U.S. Dist. LEXIS 14844, at *20.

## CONCLUSION

WHEREFORE the Plaintiff, MARCUS HAMPTON, respectfully requests that this Honorable Court deny the Defendants' Motion for Summary Judgment, and provide any such other further relief as it deems equitable and just.

Dated: 26 August 2020

Respectfully Submitted,

**MARCUS HAMPTON**

By:     /s/Jeanette Samuels
                    *One of Plaintiff's Attorneys*

Jeanette Samuels
SHILLER PREYAR JARARD & SAMUELS
601 South California Avenue
Chicago, Illinois 60612
T: 312-226-4590
F: 773-346-1221
E: sam@spjslaw.com