IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARCUS HAMPTON,          )
      )
      Plaintiff,     )   Case No.   18 C 6346
      )
   v.       )
      )   Judge Robert W. Gettleman
COUNTY OF COOK, ALEXANDRA    )
BOUZIOTIS, CHRISTOPHER MCDONOUGH,   )
BRUCE STEINKE,      )
      )
     Defendants.    )

## <u>MEMORANDUM OPINION & ORDER</u>

Plaintiff Marcus Hampton brought a five count complaint against the County of Cook, Officer Alexandra Bouziotis, Officer Christopher McDonough, and Officer Bruce Steinke, alleging failure to provide medical care under 42 U.S.C. § 1983 (Count I), unlawful pretrial detention under 42 U.S.C. § 1983 (Count II), indemnification (Count III), malicious prosecution under state law (Count IV), and intentional infliction of emotional distress (Count V).[1] On January 21, 2020, the Court dismissed Count V. (Doc. 95). Defendants County of Cook, Officer Bouziotis, and Officer McDonough have moved for summary judgment on the remaining counts. Defendant Steinke filed a separate motion for summary judgment. For the reasons discussed below, defendant Steinke's motion (Doc. 127) is denied, and defendants County of Cook, Bouziotis, and McDonough's motion (Doc. 131) is denied in part and granted in part.

---

[1] Plaintiff states that he is proceeding against defendant Steinke only on the unlawful pretrial detention claim (Count II) and stipulates to the dismissal of all other Counts against defendant Steinke.

## BACKGROUND

**1) Local Rule 56.1**

As a preliminary matter, plaintiff failed to include a statement of facts section in his response briefs, electing instead to leave it to the court to sift through the Local Rule 56.1 statements, and the underlying exhibits, to determine the factual background and sequence of relevant events. Courts in this district have repeatedly informed litigants that a Local Rule 56.1 statement of facts is not a substitute for a statement of facts section contained in a supporting memorandum of law. See e.g., FirstMerit Bank, N.A. v. 2200 Ashland, LLC, No. 12 C 572, 2014 WL 6065817 (N.D. Ill. Nov. 13, 2014); Cleveland v. Prairie State College, 208 F.Supp.2d 967, 972-73 (N.D. Ill. 2002); Duchossois Indus. v. Crawford & Co., No. 99 C 3766, 2001 WL 59031 (N.D. Ill. Jan. 19, 2001) ("Local Rule 56.1 statements are not intended to be substitutes for a statement of facts section in a memorandum of law. Rather, their purpose is to assist the court in identifying those material, uncontested facts in the record that entitled the movant to summary judgment."). Plaintiff's briefs assume the court is as familiar with the underlying events as the authors, jumping right into legal arguments without even a cursory explanation of the case.

More troubling is plaintiff's failure to cite to his Local Rule 56.1 statement of facts in his response briefs. Plaintiff makes statements about the record and events, including the content of deposition testimony and radio transmissions, without citing to his Local Rule 56.1 statement of facts. This failure puts an undue burden on the court to sift through mounds of paper to determine whether the record supports plaintiff's characterization of events. The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." Flint v. City of Belvidere, 791 F.3d 764, 767 (7th Cir. 2015). Consequently, the court

will consider only plaintiff's factual assertions to the extent they are described in plaintiff's Local Rule 56.1 statement of facts and supported by the record.

## 2) Facts for Summary Judgment

On June 18, 2016, plaintiff was driving his girlfriend's car in Chicago Heights, Illinois. Plaintiff's friend, Abagail Green, was in the passenger seat. At approximately 11:00 p.m., plaintiff was pulled over by Lieutenant Jackson of the Cook County Sheriff's Police Department for failing to have his headlights on. According to defendants, as Jackson approached plaintiff's vehicle, Jackson noticed the passenger make movements under her seat.[2] Jackson asked plaintiff for his license and registration at which point plaintiff stated that his driver's license was revoked. Plaintiff also stated that he was driving to pick up food so he could take his medication.

Jackson placed plaintiff under arrest and put him in a squad car. At some point, Officers Steinke, Bouziotis, and McDonough arrived at the scene. The officers searched the vehicle and found a black box under the passenger seat containing a loaded handgun, a scale, and clear plastic wrap containing cannabis. The officers then placed Green under arrest as well. According to plaintiff, he began to experience chest pain and dizziness while waiting in the squad car. Plaintiff maintains that he informed the officers that he suffered from heart issues, end stage renal failure, and needed his medication. Green further testified that she told the officers that plaintiff needed medical help and needed his medication. The last thing plaintiff clearly remembers is sitting in the back of the squad car.

At 11:35 p.m., Bouziotis informed dispatch that she and plaintiff were leaving the scene. The parties contest whether Green and plaintiff were transported in the same vehicle. Green testified that they were transported together, while McDonough testified that they were

---

[2] Green maintains that she had a cup of water that she placed on the floor of the car when pulled over.

transported separately.  Green stated that they stopped at the Chicago Heights Police Department before heading to the Sixth District lockup located in the basement of Markham Courthouse.[3] By the time they arrived at Markham Courthouse, plaintiff could not walk and needed assistance.

At 12:20 a.m., officers attempted to take plaintiff's statement confessing to possessing the handgun and marijuana.  According to Green, plaintiff's condition had deteriorated to the point that he was incoherent and had his head down on the table.  Green saw a male officer put a pen in plaintiff's hand and move it across a sheet of paper.  Plaintiff claims that the officers forced him to sign a statement he did not give, that the signature on the statement is not his, and that the signature and initials match Officer McDonough's handwriting.  Plaintiff further claims that the officers involved denied medical attention until plaintiff agreed to sign a statement.

At 12:35 a.m., McDonough requested an ambulance, stating that plaintiff was feeling faint and could not walk.  Paramedics worked on plaintiff for nineteen minutes before leaving for the hospital.  The paramedics' records indicate that plaintiff's blood pressure had risen to 180/112.  At the hospital, plaintiff had surgery on his heart valves.

The Cook County State's Attorney's Office charged plaintiff with several crimes, including aggravated unlawful possession of a weapon by a felon and possession of cannabis.[4] After being discharged from the hospital on June 20, 2016, Hampton was placed into custody at Cook County Jail.  He was subsequently released on electronic monitoring on November 3, 2016.  Plaintiff was removed from electronic monitoring on released on an "I-Bond" on January 18, 2017.

---

[3] Defendants appear to contest this assertion.  Plaintiff notes that it takes about 10-15 minutes to drive from the scene of the arrest to Markham Courthouse.  The parties left the scene at 11:35 p.m. and did not arrive until 12:07 a.m.

[4] Defendants state that plaintiff was charged with aggravated unlawful possession of a weapon by a felon, possession of cannabis, and driving on a suspended license.  In support, Defendants point to the arrest report which lists all three offenses.  Plaintiff states that he was charged only with firearm and gun charges, and points to the criminal complaint and indictment.  Upon the court's own review of the record, it appears that plaintiff was charged only with the firearm and cannabis offenses.

On November 7, 2017, the state court held a hearing on plaintiff's motion to suppress certain evidence. That motion was denied. Plaintiff filed an additional motion to suppress his statement. The state court granted that motion on June 11, 2018, stating:

> I find that after [Bouziotis] read [plaintiff's] Miranda rights his condition worsened. He talked about being light-headed. He was so bad the officer on her own called the ambulance. And after she called the ambulance, that is when the defendant gave the statement. I don't find this to be a voluntary statement, but I do believe the officer and I think the officer was very very credible. Motion to suppress will be granted. [5]

One June 21, 2018, the Cook County State's Attorney's Office dropped the charges against plaintiff.

Plaintiff filed suit against Officer Bouziotis, County of Cook, and unknown officers on September 18, 2018. On September 5, 2019, and after taking some discovery, plaintiff amended his complaint to add McDonough and Steinke as a party. Steinke admits that he was not disclosed as a possible witness until December 14, 2018. Plaintiff claims that McDonough was not disclosed as a possible witness until February 4, 2019—a claim defendants dispute. The parties then filed the instant motions for summary judgment.

## **LEGAL STANDARD**

Summary judgment is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In determining

---

[5] In the underlying state court case, defendant Bouziotis claimed that she called the ambulance. She testified to this effect at the motion to suppress hearing. Defendants now admit, and a recording of the radio transmission indicates, that defendant McDonough called the ambulance. The radio transmission was not disclosed to plaintiff in the underlying state court case.

whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. See CTL ex rel. Trebatosky v. Ashland Sch. Dist., 743 F.3d 524, 528 (7th Cir. 2014). But the nonmovant "is only entitled to the benefit of inferences supported by admissible evidence, not those 'supported only by speculation or conjecture.'" Grant v. Trus. of Ind. Univ., 870 F.3d 562, 568 (7th Cir. 2017).

## DISCUSSION

### 1) Statute of Limitations

Both motions seek summary judgment based on the statute of limitations. Specifically, defendants argue that the following claims are time-barred: (1) the denial of medical care claim under § 1983 against all defendants; (2) the unlawful pretrial detention claim under § 1983 against McDonough and Steinke; and (3) the malicious prosecution claim against McDonough.

#### A. Section 1983 Claims

The statute of limitations period for § 1983 claims is two-years. Owens v. Evans, 878 F.3d 559, 563 (7th Cir. 2017). Defendants contend that the denial of medical care claim accrued on June 19, 2016, when the constitutional violation was complete. See, Wallace v. Kato, 549 U.S. 384, 388 (2007). According to defendants, the limitations period expired two years later on June 19, 2018. Plaintiff filed his complaint on September 18, 2018. Consequently, defendants argue that plaintiff's denial of medical care claim is untimely for all defendants.

For the unlawful pretrial detention claim, defendants argue that the claim accrued when plaintiff's detention ended—here, when plaintiff was released from Cook County Jail on November 3, 2016, or when he was released from electronic monitoring on January 18, 2017. According to defendants, the latest the claim expired was on January 18, 2019. Plaintiff did not

add defendants McDonough and Steinke until September 5, 2019. Thus, defendants argue that the unlawful pretrial detention claim is untimely as to those two defendants.

Plaintiff counters that he could not have brought either the unlawful pretrial detention claim or the denial of medical care claim during the pendency of his criminal proceedings because they were barred by Heck v. Humphrey, 512 U.S. 477, 486-87 (1994). Under Heck, a § 1983 claim that implicates the validity of an underlying criminal proceeding cannot accrue until the detention or proceeding terminates in the accused's favor. Id.; see also Savory v. Cannon, 947 F.3d 409, 423 (7th Cir. 2020). Plaintiff's theory is that defendants denied him medical care in order to obtain a false confession, and that the false confession invalidated any probable cause to detain him pretrial.

The court agrees that plaintiff's unlawful pretrial detention claim was Heck-barred until the underlying criminal proceedings terminated. Because success on the unlawful pretrial detention claim would be incompatible with a conviction on the charges for which plaintiff was arrested, detained, and prosecuted, "there is no logical way to reconcile the claim[s] with a valid conviction." Culp v. Flores, 454 F.Supp.3d 764 (citing Savory, 947 F.3d at 417); see also, Serrano v. Guevara, No. 17 C 2869, 2020 WL 3000284, at *18 (N.D. Ill. June 4, 2020)). Consequently, plaintiff's unlawful pretrial detention claim did not accrue until June 21, 2018— the day he received a favorable termination. Plaintiff filed his complaint on September 18, 2018. He amended his complaint to add Steinke and McDonough on September 5, 2019. His unlawful pretrial detention claim is timely as to all defendants.

However, plaintiff's denial of medical care claim was not Heck-barred because it was sufficiently distinct from the underlying conviction. Although plaintiff attempts to tie his allegedly false confession to defendants' motive to deny medical care, plaintiff's claim for denial

7

of medical care is independent of the criminal charges about which he complains. Plaintiff could have succeeded on his denial of medical care claim without implicating the validity of the underlying criminal proceedings.[6] Consequently, that claim accrued on June 19, 2016, when the alleged constitutional violation was complete. The limitations period expired two years later on June 19, 2018. Plaintiff filed his complaint three months after the limitations period expired. His denial of medical care claim is thus untimely.

### B. Malicious prosecution

The statute of limitations for a malicious prosecution claim is one year. 745 ILCS 10/8-101. A malicious prosecution claim generally accrues once the criminal proceedings are terminated in the plaintiff's favor. Heck v. Humphrey, 512 U.S. 477, 489 (1994). Here, plaintiff's case was dismissed on June 21, 2018. He filed his original complaint three months later on September 18, 2018. Defendants argue that the malicious prosecution claim is untimely against defendant McDonough because McDonough was added to the case in September of 2019—three months after the limitations period expired.

Plaintiff responds that the statute of limitations should be equitably tolled based on the discovery rule and because defendants actively concealed McDonough's identity. See U.S. v. Norwood, 602 F.3d 830, 837 (7th Cir. 2010) ("The discovery rule starts the statute of limitations running only when the plaintiff learns that he's been injured and by whom."); American Family Mut. Ins. Co. v. Plunkett, 14 N.E.3d 676, 681 (Ill. App. 2014) ("Equitable tolling of a statute of limitations may be appropriate if the defendant has actively misled the plaintiff…."). Plaintiff notes that the police reports did not identify McDonough's involvement in plaintiff's arrest or interrogation. Further, plaintiff argues that he could not remember all of the officers present

---

[6] Of course, plaintiff may offer evidence of defendant's lack of medical care to support his claim of a false confession.

because he was in and out of consciousness on the night in question, and that he was otherwise diligent in identifying the participating officers. See Plunkett, 14 N.E.3d at 681 (extraordinary barriers warranting equitable tolling include situations where the plaintiff could not learn the identity of the proper defendants through the exercise of due diligence). Finally, plaintiff notes that McDonough was not identified until defendants answered plaintiff's interrogatories on February 4, 2019, and that plaintiff added McDonough as a party several months later. Defendants counter that the discovery rule does not apply because plaintiff was aware of his injury as it occurred and because a document in plaintiff's underlying criminal case referenced McDonough.

Based on the record, the court finds that equitable tolling is appropriate. The statute of limitations on the malicious prosecution claim did not begin to run until McDonough was disclosed to plaintiff on February 4, 2019. His malicious prosecution claim is timely.

### 2) Unlawful Pretrial Detention

Unlawful pretrial detention claims are governed by the Fourth Amendment. Lewis v. City of Chicago, 914 F.3d 472, 478 (7th Cir. 2019). In Manuel v. City of Joliet, the Supreme Court clarified that a claim for wrongful pretrial detention rests on the fundamental principle that pretrial detention is a "seizure," both before legal process and after, and is justified only by probable cause. 137 S.Ct. 911, 920 (2017). Wrongful pretrial detention "can happen when the police hold someone without any reason before the formal onset of a criminal proceeding. But it can also occur when the legal process itself goes wrong—when, for example, a judge's probable cause determination is predicated solely on a police officer's false statements." Id. at 918-19. The existence of probable cause defeats a claim for unlawful detention. Probable cause exists

when the officer reasonably believes that the individual has committed or is about to commit a crime.  Holmes v. Vill. of Hoffman Estates, 511 F.3d 673, 679 (7th Cir. 2007).

Defendants argue that they are entitled to summary judgment because they had probable cause to arrest plaintiff.  Probable cause existed for the arrest, defendants claim, because plaintiff was driving with a revoked license.  Defendants further argue that a grand jury indicted plaintiff on ten separate counts, indicating probable cause existed for the arrest.  Plaintiff's arguments in response are somewhat unclear.  Plaintiff repeatedly states that he is not contesting the initial stop or the arrest; he is contesting only the prolonged detention based on the firearm and cannabis charges.[7]  According the plaintiff, the only probable cause tying plaintiff to the firearm and the cannabis was his false confession.  Plaintiff argues that there was no other basis connecting plaintiff to those items because the vehicle was not his, he had never driven it before, and there was another passenger in the vehicle.

The court agrees with defendants that there was probable cause to arrest and detain plaintiff for driving with a revoked license.  However, the record indicates that plaintiff was not charged with that offense.  Plaintiff was charged only with firearm and cannabis charges, and those charges were the sole basis for plaintiff's five-month detention and subsequent electronic monitoring.  The record further indicates that there were few facts connecting plaintiff to those items, other than his confession.  Defendants thus conflate probable cause for the arresting offense of driving with a revoked license, and probable cause for detention based on the firearm and cannabis charges.  Probable cause for the former says little about probable cause for the latter.  Further, defendants' arguments regarding the validity of the indictment—which was based

---

[7] Plaintiff does not identify the prolonged detention.  It is unclear to the court if plaintiff merely means the time at the Markham Courthouse before plaintiff went to the hospital, or plaintiff's time in Cook County Jail after being discharge from the hospital.  The court assumes the latter.

on plaintiff's allegedly false confession—are similarly unavailing. See Manuel, 137 S.Ct. at 918-19. This case presents the precise scenario articulated in Manuel in which the legal process itself goes wrong. The indictment cannot act as a bar to plaintiff's claim.

Based on the foregoing record, a reasonable jury could conclude that defendants lacked probable cause to detain plaintiff for the firearm and drug charges. Defendants are not entitled to summary judgment on this claim.

### 3) Malicious Prosecution

Under Illinois law, a malicious prosecution claim requires a plaintiff to establish: "(1) the commencement or continuation of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceedings; (4) the presence of malice; and (5) damages resulting to the plaintiff." Holland v. City of Chicago, 643 F.3d 248, 254 (7th Cir. 2011) (quoting Swick v. Liautaud, 662 N.E.2d 1238, 1234 (1996)). For purposes of a malicious prosecution claim, probable cause exists where the facts "would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." Williams v. City of Chicago, 733 F.3d 749, 759 (7th Cir. 2013). The court considers whether probable cause for the prosecution existed as of the filing of the charging document, not at the time of arrest. Holland, 643 F.3d at 254.

Defendants argue that they are entitled to summary judgment because: (1) plaintiff sued only police officers, and police officers don't prosecute criminal cases; (2) the proceedings did not terminate in plaintiff's favor in a manner indicative of innocence; (3) there was probable cause to arrest plaintiff; and (4) plaintiff cannot demonstrate malice.

Although generally "the State's Attorney, not the police, prosecutes a criminal action," Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996), liability may extend to anyone, including police officers, if they played a "significant role" in causing the prosecution, Beaman v. Freesmeyer, 131 N.E.3d 488, 498 (Ill. 2019). Defendants play a significant role when they "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him or her, concealed exculpatory evidence, or otherwise engaged in wrongful bad-faith conduct instrumental in the initiation of the prosecution." Id. at 500 (citations omitted). A jury could reasonably find that such is the case here, given defendants' active involvement in soliciting plaintiff's false confession.

For the second element, plaintiff received a favorable termination when his charges were dismissed. The Illinois Supreme Court has held that, except in limited circumstances, a nolle pros is considered a termination in favor of the accused. Swick v. Liautaud, 662 N.E.2d 1238, 1243 (1996). Those exceptions include, "when the nolle prosequi is the result of an agreement or compromise with the accused, misconduct on the part of the accused for the purpose of preventing trial, mercy requested or accepted by the accused, …or the impossibility or impracticality of bringing the accused to trial." Id. None of those exceptions are present here.

As for probable cause, courts consider whether probable cause existed at the time of charging, not at the time of arrest. Thus, defendants' arguments regarding probable cause at the time of arrest (for an offense not charged) are inapposite. Defendants have provided no arguments suggesting that they had probable cause to charge plaintiff for the firearm and cannabis offenses. Holland, 643 F.3d at 254. In fact, it appears that the only probable cause stems from plaintiff's allegedly false statement. Finally, "malice can be inferred when a

defendant lacks probable cause and the circumstances indicate a lack of good faith." Id. at 255. Again, a reasonable jury could find malice based on the record.

For the foregoing reasons, a jury could find for plaintiff on the malicious prosecution claim. Plaintiff's claim survives summary judgment.

### CONCLUSION

For the reasons stated above, defendant Steinke is dismissed from Counts I and IV. Defendant Steinke's motion for summary judgement (Doc. 127) is denied. Defendants County of Cook, Bouziotis, and McDonough's motion for summary judgment (Doc. 131) is granted with respect to the denial of medical care claim and denied with respect to the remaining claims.

**ENTER: October 31, 2020**

Robert W. Gettleman
United States District Judge